UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BRUSHY CREEK FAMILY HOSPITAL, LLC, <br>     *Plaintiff* <br><br> v. <br><br> BLUE CROSS AND BLUE SHIELD OF TEXAS, <br>     *Defendant* | §§§§§§§§§§    CIVIL NO. 1:22-CV-00464-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion to Remand, filed May 27, 2022 (Dkt. 5), and the associated response and reply briefs. By Text Order entered July 18, 2022, the District Court referred the Motion to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

### I. Background

Plaintiff Brushy Creek Family Hospital, LLC ("Brushy Creek"), a Texas limited liability company, operates an emergency hospital facility in Round Rock, Texas. On or around January 22, 2021, Brushy Creek provided emergency medical services to Frank Lucero, who agreed to pay for the services. Dkt. 1-5 (Original Petition) ¶ 9. Lucero also represented that he was insured by Defendant Blue Cross Blue Shield of Texas ("BCBSTX") and authorized Brushy Creek to receive any payment owed to him by his insurer. *Id.* After treating Lucero, Brushy Creek alleges that, as

Lucero's assignee, it sent BCBSTX "a reasonable and customary bill for services" for $51,419, of which Lucero's share was $878.20. *Id.* ¶ 10. Brushy Creek further alleges that BCBSTX "subsequently accepted coverage and provided a partial payment of $197.44," leaving $50,343.36 in dispute. *Id.* Brushy Creek is an out-of-network provider because "there is no express, written contract" between the parties. *Id.*

On April 11, 2022, Brushy Creek filed suit against BCBSTX in state court, asserting claims under Texas Insurance Code § 1301.155(b) and breach of implied contract. *Brushy Creek Family Hospital, LLC v. Blue Cross and Blue Shield of Texas*, No. 22-0449-C425 (425th Dist. Ct., Williamson, Cnty., Tex. Apr. 11, 2022). Contending that Brushy Creek's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), BCBSTX removed the case to this Court on the basis of federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1441 and 29 U.S.C. § 1132. Dkt. 1. Brushy Creek now moves for remand, arguing that this Court lacks federal question jurisdiction because Brushy Creek's state law claims are not preempted by ERISA.

## II.   Legal Standards

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). The party seeking removal "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute must "be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). A district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

Determining whether a case arises under federal law ordinarily turns on the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). Under that rule, a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law. *Id.* Complete preemption, however, is an exception to the well-pleaded complaint rule. *Id.* When a federal statute "wholly displaces the state-law cause of action through complete preemption," the state claim can be removed. *Id.* ERISA is one such federal statute with the "extraordinary pre-emptive power" to "convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 209 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

Congress enacted ERISA "to provide a uniform regulatory regime over employee benefit plans" and equipped ERISA with "expansive pre-emption provisions" to ensure that the regulation of employee benefit plans would be "exclusively a federal concern." *Id.* at 208. Any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209. State law causes of action that implicate ERISA's civil enforcement provisions therefore are "necessarily federal" and removable to federal court. *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009).

ERISA's civil enforcement scheme is laid out in § 502(a) of the Act, 29 U.S.C. § 1132(a). Section 502(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

In *Davila*, 542 U.S. 200 at 210, the Supreme Court articulated the test for determining whether ERISA completely preempts a non-federal cause of action. Under *Davila*, a party's state-law claim falls within the scope of § 502(a)(1)(B) and therefore is completely preempted if (1) an individual could have brought his claim under § 502(a)(1)(B), and (2) there is no independent legal duty that is implicated by the defendant's actions. *Id.*

As the party seeking removal on the basis of ERISA preemption, the defendant bears the burden of satisfying this two-part inquiry. *Lone Star*, 579 F.3d at 528. The court may not remand if the defendant demonstrates that one of the plaintiff's claims is completely preempted by ERISA. *Id.* at 528-29.

### III.   Analysis

To determine whether this case should be remanded to state court, the Court considers in turn the two prongs of the *Davila* preemption inquiry.

**A. Brushy Creek Could Have Brought This Action Under ERISA**

The first part of the *Davila* inquiry requires the Court to determine whether Brushy Creek could have brought its claims under § 502(a)(1)(B). In other words, the Court must determine whether Brushy Creek has standing to sue under the ERISA statute. *Scott & White Mem'l Hosp. v. Aetna Health Holdings, LLC*, No. 6:17-CV-0075-RP-JCM, 2018 WL 7377912, at *25 (W.D. Tex. Aug. 31, 2018). "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (quoting *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 333-34 (5th Cir. 2005)). Brushy Creek concedes that it has standing to sue under ERISA as a healthcare provider that has been assigned Lucero's benefits under an ERISA plan. Dkt. 5 at 3. Accordingly, the Court finds that the first prong of the *Davila* inquiry is satisfied.

### B. Texas Law Does Not Create an Independent Legal Duty

Under *Davila*'s second prong, a cause of action is completely preempted by ERISA "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. A legal duty is not independent where interpretation of the terms of a benefits plan "forms an essential part" of the plaintiff's claim and liability exists "only because of" the ERISA plan. *Id.* at 213. The relevant question is whether plaintiff is seeking benefits under the terms of the plan or rights that derive from an independent basis. *See Scott*, 2018 WL 7377912, at *26.

Brushy Creek argues that its claims are not subject to complete preemption because it does not challenge BCBSTX's coverage decisions under the ERISA plan, only the rate at which its insurance claims were reimbursed. A "rate of payment/right to payment" distinction was recognized in *Lone Star*, 579 F.3d at 530 ("A claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA."). Brushy Creek further argues that the rate at which its claims should have been reimbursed is determined by Texas Insurance Code § 1301.155(b), not the ERISA plan, so the Texas statute creates an independent legal duty.

BCBSTX responds that the right to payment/rate of payment distinction does not apply here because the parties have no provider agreement. It contends that: "In the absence of the Plan, there would obviously be no reason for Plaintiff to look to BCBSTX for payment at all." Dkt. 7 at 9. BCBSTX further argues that any duty imposed by § 1301.155(b) is not independent of the ERISA plan because the language of the statute is tied to the terms of that plan.

The District Court decided the same question presented here in *Hill Country Emergency Medical Assocs. v. UnitedHealthcare Ins.*, No. 1:19-cv-00548-RP, Dkt. 18 (Dec. 10, 2019). In *Hill Country*, the plaintiffs provided physician staffing for emergency rooms across Central Texas; as in this case, the plaintiffs had no contracts with the defendant insurers and provided services to

the defendants' health plan members as out-of-network providers. *Id.* at 2. Alleging that the defendants paid them at improper rates, the *Hill Country* plaintiffs asserted claims for violations of the Texas Insurance Code and Texas Prompt Pay Act, *inter alia*. *Id.*

After the *Hill Country* defendants removed the case to this Court, the *Hill Country* plaintiffs argued under *Davila*'s second prong that their causes of action did not implicate whether claims were payable under an ERISA plan, but only whether the defendants paid them at the usual and customary rate as required under Texas law. This Court denied plaintiffs' motion to remand, holding that:

> Plaintiffs' causes of action do not implicate legal duties independent of ERISA; rather Plaintiffs' claims for reimbursement hinge on the terms of the ERISA-governed plans. Plaintiffs concede that Defendants determined all the claims at issue to be payable. As Defendants rightly note, "Plaintiffs have no provider agreements with Defendants and no other contractual basis on which they were entitled to seek reimbursement from Defendants." Any potential liability for underpayment would therefore derive entirely from the rights and obligations encompassed within the terms of the benefit plans at issue. While the Texas statutes cited by Plaintiffs state rules for reimbursement of emergency care by non-network providers, these statutes still link reimbursement to either a plan's terms or a separate provider agreement, which Plaintiffs—as out-of-network providers—have not negotiated. *See, e.g*, Tex. Ins. Code § 1301.155 ("If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the following emergency care services at the usual and customary rate or at an agreed rate *and at the preferred level of benefits* until the insured can reasonably be expected to transfer to a preferred provider") (emphasis added). As assignees of plan benefits, Plaintiffs' reimbursement claims are not based on Texas law; they are inextricably linked to the reimbursement obligation set forth in the plans' terms.

*Id.* at 9 (internal citations omitted). The Court concluded: "Because Defendants have shown that ERISA completely preempts at least one of Plaintiffs' claims, this Court cannot remand this action." *Id.* at 11.

6

Here, as in *Hill Country*, the "rate of payment/right to payment" distinction recognized in *Lone Star* is inapplicable because there is no independent provider agreement between the parties. "Absent a provider agreement with a separate fee schedule, both the right to payment and the rate of reimbursement would depend on the terms of the ERISA plan." *Hill Country*, Dkt. 18 at 7.

Brushy Creek argues that a 2019 amendment to Texas Insurance Code § 1301.155(b) adding the "usual and customary rate or at an agreed rate" language construed by this Court in *Hill Country* created a duty independent of an ERISA plan.[1] The Court disagrees.[2]

According to traditional rules of statutory construction, the Court looks to the plain language and statutory context when interpreting an undefined statutory term. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021) (citing *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)). "Other statutory definitions are helpful because we presume that the legislature employs the same meaning when it uses the same word to address the same subject matter." *Id.* (citing *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 452 (Tex. 2017)).

---

[1] Brushy Creek cites *ACS Primary Care Physicians Sw., P.A. v. United Healthcare Ins. Co.*, No. 4:20-CV-1282, 2020 WL 4932152 (S.D. Tex. Aug. 17, 2020), filed by some of the same parties who stipulated to dismiss *Hill Country* after this Court denied remand, and a subsequent decision in the same case, *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927, 942 (S.D. Tex. 2021). On interlocutory review, the Fifth Circuit certified the following question to the Texas Supreme Court, where it remains pending: "Do §§ 1271.155(a), 1301.0053(a), and 1301.155(b) of the Texas Insurance Code authorize Plaintiff Doctors to bring a private cause of action against UHC for UHC's failure to reimburse Plaintiff Doctors for out-of-network emergency care at a 'usual and customary' rate?" *ACS Primary Care Physicians Sw., P.A. v. United Healthcare Ins. Co.*, 26 F.4th 716, 718 (5th Cir. 2022), *certified question accepted* (Feb. 25, 2022).

[2] Brushy Creek also relies on *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474 (2020), in which the Supreme Court held that a statute regulating the price at which pharmacy benefit managers are required to reimburse pharmacies for the cost of prescription drugs was not subject to conflict preemption. The statute at issue in *Rutledge* is readily distinguishable from § 1301.155(b) because it does not regulate the ERISA reimbursement rates themselves; instead, it regulates the pharmacy benefit managers, who may pass along higher costs to plans with which they contract. *Rutledge*, 141 S. Ct. at 480 ("In short, ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage."). Moreover, complete preemption and conflict preemption are separate inquiries, and Brushy Creek did not put forth an argument regarding how *Rutledge* alters the independent legal duty analysis under *Davila*.

The phrase "at the usual and customary rate" is not defined in § 1301.155(b), but the 2019 amendment discussed above added a definition of that term as "the relevant allowable amount as described by the applicable master benefit plan document or policy" to several other chapters of the Texas Insurance Code. TEX. INS. CODE § 1551.003(15), 1575.002(8), 1579.002(8); Acts 2019, 86th Leg., ch. 1342 (S.B. 1264). This definition directly links the applicable rate for Lucero's care in this case to the ERISA plan. The Court thus finds that Brushy Creek's claims challenging the rate of reimbursement are "inextricably linked" to the reimbursement obligation set forth in the ERISA plan's terms. *Hill Country*, Dkt. 18 at 9.

Because § 1301.155(b) does not create an independent legal duty, the Court finds that BCBSTX also has satisfied the second part of the *Davila* inquiry. Accordingly, Brushy Creek's claims are completely preempted by ERISA.

## IV.   Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Remand (Dkt. 5).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and return it to the docket of the Honorable Robert Pitman.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and,

8

except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 11, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE